ELDRIDGE G. HALL *et al.*

*v.*

CRANE BROS. MANUFACTURING COMPANY.

TRUST—*when created.* Where, by consent of his creditors, a failing debtor was allowed to continue his business, under the supervision of a committee of the creditors, for a limited time, and a cashier or clerk was also appointed to receive and pay out money, the business to be done in the debtor's name, as before, until the state of his affairs could be ascertained, and the property of the debtor never came into the possession of the committee, who merely acted in an advisory manner, and the cashier as a clerk, it was *held,* that the committee and cashier were not trustees as to the property of the debtor for the benefit of creditors, and consequently were not liable to such creditors.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. GEO. W. SMITH, and Messrs. SLEEPER & WHITON, for the appellants.

Mr. C. C. BONNEY, and Messrs. JAY & GRIGGS, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Prior to November, 1872, the firm of John Davis & Co., composed of John Davis and Joseph Creswell, had been engaged in constructing heating apparatus and steam elevators, and fitting the same in buildings. At the date mentioned, they had on hand a large amount of stock, adapted to and valuable if used in the business in which the firm had been engaged, but not salable on a general market for anything like its real value. They had contracted a large indebtedness. The fact of the financial embarrassment of the firm became known, and on the 21st day of November of that year a meeting of their creditors was held to inquire into the affairs of the firm, with a view to see what could be done that would best promote the interests of both debtors and creditors. A committee appointed at that meeting made a report to a meet-

ing of the creditors, of the amount of assets and the liabilities of the firm, with certain recommendations, which were adopted. Deducting the assets, as estimated, from the liabilities, which had been accurately ascertained, showed a deficit of many thousand dollars. The valuation placed on the assets equaled 83.32 per cent of the total liabilities. But there were small claims and claims for labor, which the committee thought ought to be paid in full, and after setting apart a sum sufficient to pay such claims, the remaining assets equaled but 78.93 per cent of the liabilities, on the basis of the estimates then made. Exactly how the committee estimated the value of the stock on hand, does not appear, but most probably it was at its reasonable value, to be used in the business in which the firm had been engaged; but the evidence shows, that had the stock in store been placed on the market, not more than 33 per cent of its value could have been realized, and, from the prices obtained for what remained at the bankrupt sale, that was a very liberal estimate.

In view of the result, "arrived at after what the committee believed to be a fair sifting out of the assets," they made certain recommendations for the consideration of the creditors, among the most important of which are the following: 1st, that they compound their claims against John Davis & Co. at sixty-five cents on the dollar, as a basis of settlement; and, 2d, that the business of John Davis & Co. be continued in their own names, as heretofore, but that the creditors shall have the right, by consent of and agreement with the members of that firm, to appoint a committee of three creditors to supervise the business of the firm for a limited period, and until the business, by completion of contracts and other work, shall be so liquidated the true status of the affairs of John Davis & Co. can be accurately ascertained. Other recommendations made had reference to the details of matters relating to the management of the business in case it should be placed under the supervision of the committee acting on behalf of the creditors. One suggestion was, that a "receiver or cashier" be placed in

the office of John Davis & Co., at the costs of the firm, "into whose hands all moneys, dues, notes or other assets" should pass, and by whom all payments were to be made. Another recommendation was, that after the affairs and business of John Davis & Co. had been liquidated, as far as possible, the committee of supervision was to declare a dividend "out of the remaining moneys or other available assets on hand," which was to be a payment on the composition of sixty-five per cent the creditors were to receive, and when that was done and "the money or available assets placed on deposit for such purpose," the committee should cause to be mailed to each creditor notice of such fact, "when the functions of the committee and their receiver or cashier shall cease, and the business and affairs of said John Davis & Co. shall revert entirely to their own control and management." The report and recommendations of the committee submitted were concurred in by all the creditors except one firm, whose claim was afterwards bought in by complainant, by which it was afterwards controlled. Under the report adopted, a committee, consisting of defendants Hall, Eddy and Walworth, was appointed, to supervise the affairs of Davis & Co. for a limited period, for and on behalf of the creditors coming under the composition agreement. The committee at once entered upon the discharge of such duties as were contemplated by their appointment, and at the instance of complainant and other creditors appointed George S. Bowen, a co-defendant, cashier in the office of Davis & Co.

The firm of Davis & Co., with the approval of the supervisory committee and of their previous creditors, continued their business as before, finishing up old ones and taking new contracts in the line of business in which they had been engaged. During the period the committee were acting, complainant was engaged in the same business, and sold to Davis & Co. goods in their line amounting to several thousand dollars in value, to be used by that firm in new as well as old contracts, for all of which it appears it was fully paid. Old

contracts were completed and a large amount of new business was taken, much of which was finished by the firm between the date of the appointment of the committee and the first day of April, 1873, when the committee ceased to act, and the entire control and management of the affairs of Davis & Co. were remitted to the firm.

Under the report under which the committee was appointed, it was obligatory on them, when they should cease to act, to send notice to all the creditors, which they did, to complainant as well as others, together with notes of Davis & Co., payable at six, nine, twelve, fifteen, eighteen and twenty-one months, for sixty-five per cent of their claims, according to the composition agreement to which they had given their assent. No dividend was declared at that time, as it does not appear there were any "moneys or other valuable assets on hand," but a report of the affairs of the debtor firm was made and sent to the creditors, showing the firm to be in rather a prosperous condition. All the creditors accepted the notes sent in liquidation of their respective claims, except complainant and perhaps one other firm. As these notes matured, some of the first in the series were paid, and a tender was made to complainant of the notes, with the first installment, but they were refused.

In September, after the committee ceased to act, this bill was filed by complainant against the members of the firm of Davis & Co., and the members of the committee, and the cashier by them appointed, on the theory the property in the hands of Davis & Co., the committee, and the cashier or receiver, was trust property, out of which its claim ought to be paid. After the filing of the bill, but before a hearing of the cause was had, the members of the firm of Davis & Co. were adjudged bankrupts, and were, by order of the court, dismissed out of the case, and thereafter the suit progressed against the persons that constituted the committee, and the receiver or cashier.

Pending a reference to the master on the original bill, an

amended or supplemental bill of complaint was filed, charging more specifically that the committee and the cashier or receiver, without compliance with the agreement of November 23, 1872, and without consent of complainant, after April 1, 1873, surrendered to Davis & Co. the assets of the firm, whereby they became liable to account for and pay complainant out of their individual estate the amount of its claim.   It was also alleged, Davis & Co. had wasted most of the assets, were adjudged bankrupts, and that the final dividend declared upon the estate was 5 9-10 per cent.   Complainant never proved its claim against the estate of the bankrupts, and, of course, received no dividend.   On the hearing, the court decreed according to the prayer of the supplemental bill, declaring defendants trustees of the estate of the insolvent debtors, and rendered a personal decree jointly against all of them, for sixty-five per cent of complainant's claim, and for the amount by it paid for the claim of the creditor who refused to come into the composition arrangement.   It is on the appeal of the members of the committee, the cause comes before this court.

On the 24th of November, 1873, on motion of complainant, the cause was referred to the master in chancery to take and state an account "concerning the matters and things in the bill contained," with direction to report the evidence that should be taken, and "also to state the material questions depending between the parties, with his opinion thereon."   The master's report, and his statement of the "questions depending between the parties," with his "opinion thereon," shows a very clear comprehension of the subject matter of the litigation, both as to the facts and the law of the case, and might with great propriety have been made the basis of a decree dismissing the bill.   It was warranted by the evidence, and by a reasonable and just construction of the report of the creditors' committee, under which defendants were appointed an advisory committee, to act instead of the whole body of the creditors, since, on account of their great number, for all to have acted would have been impracticable.

That defendants acted in good faith, with a sincere desire to promote the best interests of all concerned, admits of no doubt. The report under which they acted expressly declared the business of Davis & Co. should be continued as before, and they were fully justified in construing it as they did, as giving sanction to taking new contracts by Davis & Co., in their regular business, as well as completing old ones. That construction was acquiesced in by the creditors with a full knowledge of what was being done, and especially by the complainant corporation, which, as shown by the evidence, was engaged in the same business with Davis & Co., and had sold them a large amount of stock, which its officers knew was to be used in new contracts. No objections to taking new contracts were interposed by complainant, or any other creditor, although it was notorious the firm of Davis & Co. were doing it in violation of the spirit or letter of the agreement between the parties.

The bill is framed on a misapprehension of the duties of defendants under their appointment. It was never intended or contemplated they should be anything more than what they are denominated in the report—a "committee of supervision." Their appointment was for a "limited period," until the real status of the affairs of Davis & Co. could be accurately ascertained. It was not understood by the creditors the "committee of supervision" should have possession of the property of the debtors. This is apparent from the fact one of the committee resided in another State. The debtors were not asked to and never did surrender the property to the committee; nor did the committee assume to conduct the business. That was to be done, as before, by and in the name of Davis & Co.; and the reason assigned in the context is, that Davis & Co. might "have a sufficient incentive to personal effort," not only to do the best for themselves, but for the creditors.

It was not in the power of the committee to sell any of the stock belonging to the firm, without the consent of Davis & Co. There had been no assignment of the property of the

firm to the creditors' committee. The title to all of it still remained in the debtor firm, and any attempt on the part of the committee to dispose of it, would have been an unwarrantable interference with the owners' rights, that would have subjected the committee to an action. The assumption defendants surrendered the property back to the possession of Davis & Co., is not based on anything found in the evidence. As a matter of fact, it was never in the possession or control of the committee; nor is there any pretense for saying it was in the possession of Bowen, the other defendant. It is a perversion of terms to call Bowen a *receiver.* No duties, such as are usually performed by receivers, were attached to his appointment. He was simply a cashier, or clerk, in the office of Davis & Co., hired and paid by them, at the instance of their creditors. All the duties connected with his appointment which he was required to perform, were clerical, and nothing else. Bowen was no more the agent of the committee, nor were they any more responsible for his conduct, than complainant or any other creditor. The allegation of the bill is, the committee appointed Bowen to the position he occupied in the office of Davis & Co., at the "instance of complainant and other creditors." There is not the slightest evidence of misconduct on the part of Bowen in the position of cashier he occupied in the office of Davis & Co. He performed every duty imposed by his appointment; but if it were otherwise, we do not understand the committee would be any more responsible for his conduct than "complainant and other creditors," at whose request he was appointed. With equal propriety a decree might have passed against any other clerk in the service of Davis & Co. as against Bowen.

Rejecting the unwarrantable assumption the property of the firm of Davis & Co. was ever in the possession of, or that any title to it vested in, defendants, the case presents no difficulty. As a matter of fact, they never took possession of any of it, and their appointment, when rightly construed, did not make it their duty to do so. On the contrary, it was enjoined

19—87 ILL.

upon them to leave it in the hands of Davis & Co., that the business might be continued, as before, in their names. No assignment or delivery of the property having been made to the committee, it can not be maintained they were trustees holding it for the benefit of creditors. So far as any duties were enjoined upon the committee, they discharged them with fidelity, and, as no trust property came to their hands, they abused no confidence reposed in them in that regard.

As we have seen, no exact date was fixed when the committee should cease to act as advisory in the affairs of Davis & Co., and whether they ought to have declared a dividend " out of the moneys and available assets," if there were any, before ceasing to act, presents a question of some difficulty; but we are inclined to concur with the master on that point, that declaring such dividend was not made a condition precedent to the retirement of the committee.

The decree will be reversed and the bill dismissed.

*Decree reversed.*