Gillfillan v. Farrington et al.

ALEXANDER GILLFILLAN

v.

S. P. FARRINGTON ET AL.

1. QUESTION OF ACCEPTANCE OF PROPOSITION—INSTRUCTION.—A proposition was made by a failing debtor to his creditors to accept in full satisfaction of their respective demands, sixty per cent. of their claims in promissory notes of a responsible third party. All of the creditors, except Field & Leiter, accepted. Farrington denies that he accepted but from the evidence in the case, the court is of opinion that he accepted the proposition, and in view of the fact that his letters tended to contradict him and corroborate R., it was error for the court to instruct the jury that as R. swore positively that F. accepted, and F. as positively denied such acceptance, and as neither of them were corroborated in their evidence, the agreement could not be regarded as proven by a preponderance of evidence.

2. AGREEMENT OF CREDITORS TO ACCEPT LESS THAN AMOUNT DUE.— A debt can not be satisfied by the payment of a less sum of money than that due, and the promise to discharge upon such payment is void for want of consideration. This rule, however, does not apply to an agreement mutual in its obligations, between several creditors with a failing debtor, as the promise of one creditor is consideration for the promise of another.

3. PRACTICE—COMPLIANCE WITH TERMS OF AGREEMENT, GOOD DE-

Gillfillan v. Farrington et al.

FENSE TO ACTION FOR RESIDUE.—Compliance with the terms of such an agreement on the part of the debtor is a good defense to an action by the creditor for the residue of his original demand. The agreement displaces the original contract and may be proved as well under the general issue as under a special plea setting up the facts.

4. AN AGREEMENT TO ACCEPT LESS BY A PORTION OF CREDITORS IS VALID.—An agreement by a portion of the creditors to accept in satisfaction less than amount due, not conditional upon the concurrence of others, is as valid against them as if made by all the creditors, and a tender by the debtor, according to its terms, being equivalent to performance, is sufficient whether such tender be accepted or not. The creditor who by his own fault has prevented its actual performance will not be heard to say that the agreement is still executory.

5. FRAUD UPON THIRD PARTY.—The agreement in this case, being to take the notes of a third party, its validity, if mutual between the creditors, rests upon the additional ground that its repudiation by plaintiff, as attempted, would operate as a fraud upon such third party by diminishing his means of re-imbursement.

6. IT DOES NOT CHANGE THE RULE THAT THERE WAS NO CONVOCATION OF CREDITORS, ETC.—The fact that there was no convocation of creditors. but that they resided at different points, and correspondence was had with each separately, does not change the rule. The agreement, on the part of appellees, if made, was absolute and independent of other creditors, and such an agreement, by a single creditor to accept in satisfaction the notes of a third party, though for less than the amount of his claim, will bind him.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding. Opinion filed December 28, 1882.

Messrs. DOYLE & MORRIS, for appellant; that the note of a third person, or a specific article, regardless of its value, received or agreed to be received in full satisfaction for a debt, operates as a discharge, cited Bunge v. Koop, 8 Am. Rep. 548; Boyd v. Hitchcock, 11 Am. Dec. 248; Page v. McCree, 19 Am. Dec. 472; Savage v. Everman, 10 Am. Rep. 678.

The failure to execute such an agreement is a fraud upon the debtor and other creditors: Mullen v. Goldsmith, 32 Am. Rep. 782; Austey v. Marden, 1 P. and B. 124; Steinman v. Magnus, 11 East, 390.

An instruction that the jury has no right to wantonly disregard the testimony of any witness, unless impeached, was

Gillfillan v. Farrington et al.

proper: Robertson v. Dodge, 28 Ill. 161; Robinson v. Magarity, 28 Ill. 423.

An instruction that a mere agreement to accept will not bar the suit, unless actually accepted, was improper: Mullen v. Goldsmith, 32 Am. Rep. 781.

Mr. Geo. B. Joiner, for appellees; that the matter received in satisfaction must be given by the debtor and not by a stranger, cited 1 Smith's Leading Cases, 325; Clow v. Jost, 6 John. 37; Stark v. Thompson, 3 Monroe, 296.

The plea must aver that the matter was accepted in satisfaction: Sinard v. Patterson, 3 Blackf. 354; Maze v. Miller, 1 Wash. C. C. 328; Russell v. Lytell, 6 Wend. 390; Hawley v. Foote, 19 Wend. 516; Hefter v. Cahn, 73 Ill. 296.

As to filing many copies of the same plea: Hawlet v. Mills, 22 Ill. 341; Adams v. Smith, 58 Ill. 417; Tush v. Newell, 62 Ill. 196; State v. Max, 15 Mo. 153.

As to instructions: Mosher v. Kitchel, 87 Ill. 19; State v. Gates, 20 Mo. 400.

Pleasants, J.    This was an action of assumpsit brought by appellees upon the common counts for goods sold and delivered. Special pleas set up by way of defense: first, an agreement by divers of the creditors, including plaintiffs, with each other and with the defendant, who was then in failing circumstances, to accept in satisfaction of their respective demands the promissory notes of a responsible party, for sixty per cent. of the amount thereof in thirty, sixty and ninety days—the tender of such notes according to the agreement—their acceptance by the other creditors so agreeing, and their refusal by the plaintiffs; and second, an agreement by the plaintiffs so to accept such notes of John Fairman, and their tender and refusal.

In each it was averred that ever since such refusal said notes have been held subject to plaintiffs' order, of which they had notice, and are now brought into court.

The replications traversed only the alleged agreement on the part of the plaintiffs, upon which issue was joined and

a trial had, resulting in a verdict and judgment in favor of plaintiffs for the full amount of their claim.

Defendant was a merchant at Watseka. On December 31, 1880, his stock of goods and other assets, invoicing considerably less than the amount of his debts, were levied on by virtue of several executions, and he thereupon made an assignment under the provision of the statute. January 12, 1881, Doyle & Lott, attorneys at that place, mailed to each of the unsecured commercial creditors a statement of the assets and liabilities of the defendant, of the liens which had attached, and of the offer of John Fairman, a responsible friend, to pay them all " sixty per cent. of their claims in full in thirty, sixty and ninety days," concluding as follows: " We think this the best that can be done. Will you take it, and do you wish us to represent you in such settlement? Answer."

By the 17th all had signified their assent, excepting the firm of Field & Leiter and the plaintiffs, from whom no answer had been received.

Doyle & Lott then telegraphed Henry W. King & Co., who had assented, to see those parties and urge their immediate decision. On the 18th, Elliott Reed, of that firm, showed to plaintiff Farrington the telegrams referred to, represented that the proposition was to give Fairman's notes of the tenor above stated in settlement—that it would be open only a day or two longer—that a major part of the creditors had signified their willingness to accept it, and that the concurrence of plaintiffs was earnestly desired; and reported the result by a dispatch of the same date as follows: " Farrington accepts, Leiter declines. Advise going ahead without them. Have written."

This was communicated to Fairman, who thereupon, on the 19th, paid off the executions, delivered his notes to Doyle & Lott for transmission to the payees respectively, procured the discharge of the assignee, took possession of the goods for the defendant and proceeded to make arrangements which were afterward completed for a partnership in the business with him.

Plaintiffs received the notes so made to them on the 20th, but returned them to Doyle & Lott on the 23rd or 24th, and on the 31st commenced this suit. The others accepted theirs, and discharged the defendant before notice of plaintiffs' refusal was received.

So far there is no dispute, nor is there any pretense of fraud, misrepresentation or concealment on the part of Fairman or the defendants. But did Farrington in fact "accept" as reported?

Reed testified that Farrington said: "As their account was small and as he did not want to stand out in the matter, he would instruct his attorney at Watseka to make the settlement as per telegram at my request."

Farrington says he told him that "their claim was entirely in the hands of Geo. B. Joiner and he alone could sign any paper for a compromise," and this is all that appears in his deposition on the subject of what he said on that occasion as to the acceptance or rejection of the proposition, although he denies that he ever agreed to take for their claim less than the full amount of it.

But in a letter to Joiner of January 21st, acknowledging the receipt of Fairman's notes from Doyle & Lott, "with a polite request to send them $3 for their trouble," he says: "We told Mr. Reed that we would write to you with regard to the matter and should advise signing, of course, in accordance with your advice. This is the only intimation we have given any one except yourself, so we have no hesitation in withdrawing. If they had acted the gentlemanly part we should have signed. If you have already signed on receipt of this it is all right, or if you think it decidedly best we shall not object, but we are sure the whole can be made."

This, we think, tends to show that he knew Reed understood him as accepting the proposition submitted without reference to the judgment or advice of his attorney, and that for the supposed offense of Doyle & Lott, whom he assumed (as appears from another letter) to be attorneys for the defendant and therefore acting unprofessionally in asking a fee from him also, as well as because he had not committed himself di-

rectly either to the defendant, or to Fairman, or to Doyle & Lott, he now attempts to withdraw that acceptance. What else than such acceptance could be here meant? If he had gone no further than to say that the matter was left entirely to Joiner's discretion, as stated in his deposition, there was nothing else to withdraw or to withdraw from, and he did not withdraw that, but by this letter in terms adhered to and continued it. And why should he promise to write to Joiner if he was to say nothing more nor less than he had already written?

In another letter to the same, of the 26th, he writes: "The facts are, when King & Co. called on us, we stated to them that the claim was in your hands and left to your discretion. But not to stand in the way of settlement we would advise you to accept the compromise. But this was understood to be in accordance with all our instructions to you that you would act on your own judgment. We believe D. & L. attempted sharp play," etc.

These letters alike admit a promise at least to "advise" his attorney to accept. They do not import that the qualification or condition now claimed was expressed to Reed, but imply that it was not. They are not in harmony with the statement in the deposition, which shows no promise to advise his attorney to accept, and puts this controlling discretion of his attorney not as "understood" or a matter "of course," but as clearly expressed.

They therefore did tend, and were admitted by the court only as tending to contradict Farrington and corroborate Reed, whose testimony respectively, together with these letters, comprised the whole of the evidence upon this material question; in the light of which, and of the relation of these witnesses to the case in respect of interest, the instruction to the jury that "if they believed from the evidence that the witness Reed has sworn positively that said plaintiffs agreed to take sixty per cent. of their claim against the defendant in good notes, payable in thirty, sixty and ninety days, and that Farrington as positively denies that he did so agree, and that both witnesses are equally creditable and that neither of them

is corroborated in his evidence, then in law such agreement can not be regarded as proven by a preponderance of evidence, and they will find for the plaintiffs " was unwarranted and improper.

It may have materially influenced them to discredit Reed and find that the agreement to which he testified was not proved, while a different finding upon that question might have compelled a different verdict. For, since no point is made in the pleading or argument upon the refusal of Field & Leiter, if a promise to accept was made by Farrington in the manner and under the circumstances stated by Reed, it must have been either mutual with, and dependent upon those of the other consenting creditors, or absolute and independent of them; and in either aspect was in this case valid and binding.

It is true that ever since the decision in Cumber v. Wane, 1 Strange, 426, it has been held that a debt can not be satisfied by the payment of a less sum of the money of the debtor, and that a promise to discharge it upon such payment is void for want of consideration; but the rule does not apply to an agreement, mutual in its obligation, between several creditors with a failing debtor. In such a case the promise of each is supported by those of the others, which is deemed a sufficient consideration. Compliance with its terms on the part of the debtor is a good defense to an action by the creditor for the residue of his original demand—not, indeed, as a technical accord and satisfaction, but upon principles of equity as showing a new adjustment of the debt, so made that he can not repudiate it without committing a fraud upon other and more faithful creditors.

This displaces the original contract and hence may be proved under the general issue as well as under a special plea setting up the facts. Good v. Cheesman, 2 Barn. & Adolph. 328; Steinman v. Magnus, 2 Campb. 124; Bradley v. Gregory, Ibid. 383; Boothby v. Sowden, 3 Id. 174; Wood v. Roberts, 2 Starkie, 417; Norman v. Thompson, 4 Exch. 755; Murray v. Snow, 37 Iowa, 410; Mullen v. Goldsmith, 47 Wis. 573; Perkins v. Lockwood, 100 Mass. 249; Farrington v.

Hodgdon, 119 Mass. 453; Booth v. Smith, 3 Wend. 66; Paddleford v. Thatcher, 48 Vt. 576; Cutler v. Reynolds, 8 B. Mon. 599. Upon the same reason, such an agreement by a portion of the creditors, unless conditioned upon the concurrence of others is as valid against them as if made by all. Norman v. Thompson, *supra*. And a tender by the debtor, according to its terms, being equivalent to performance, is sufficient whether such tender be accepted or not. The creditor having by his own fault prevented its actual performance will not be heard to say that the agreement is still executory. Bradley v. Gregory; Mullen v. Goldsmith, and Farrington v. Hodgdon, *supra*.

The agreement in this case, if made as stated, being to take the notes of a third party, its validity, if mutual between the creditors, rests not only upon the same grounds but upon the further reason that its repudiation by plaintiff as attempted would operate as a fraud upon such third party also, by diminishing his means of reimbursement. Boyd v. Hitchcock, 20 Johns. 76; LePage v. McCrea, 1 Wend. 164; Booth v. Smith, 3 Id. 66; Cockshott v. Bennett, 2 T. R. 763; Steinman v. Magnus, and Bradley v. Gregory, *supra*.

But in the case at bar there was no convocation of creditors. Residing at different points, the correspondence in relation to the proposed settlement was had with each separately, and if plaintiffs assented to it they were the last to do so; from which it is argued that their promise could not have induced the action of others and therefore is not within the rule.

But this argument assumes without any proof that the others, when they assented, knew that plaintiffs would not.

The proposition to each was in terms to pay "all" in the proportion and manner therein stated, and each, excepting the plaintiffs, so far as appears, answered for himself, without knowing what others had done or would do, but naturally inferring from the character and terms of the offer that unless all accepted, or a sufficient number to make it an object to the debtor and his friends, the proposed settlement would fail. Farrington did know that not all the others had accepted, but he also understood that by refusing it he might "stand in the

Gillfillan v. Farrington et al.

way." It turned out, if he accepted, that Field & Leiter alone declined.

That circumstance, however, may be disregarded, since none of the parties concerned have made it the ground of an objection to the validity of the agreement on the part of those who accepted. And we are satisfied from the facts above stated that such agreement was, as between them, mutual in respect to its consideration and obligation. But if it were not, then it follows, as before observed, that the agreement on the part of appellees, if made, was absolute and independent of the action of other creditors. And such an agreement by a single creditor to accept in satisfaction the notes of a third party, though for less than the amount of his claim, will bind him.

It is in all strictness an accord, and the delivery or tender of such notes in accordance with its terms, a satisfaction. Bunge v. Koop, 48 N. Y. 225; Boyd v. Hitchcock and other New York cases above cited.

It is also urged that the offer of settlement was not made by the procurement, or at the instance or even with the knowledge of appellant, but by Fairman alone as a mere volunteer, and that therefore he alone can take advantage of any promise by a creditor to accept it.

The record does not contain any positive or direct evidence that appellant knew of the offer; but the relations previously existing between him and Fairman, the amount of the payments made and obligations assumed by the latter, his open dealing with the property and assignee immediately thereafter, and still later with the goods as a partner, make it quite incredible that he took these steps without the knowledge and authority of appellant.

Clearly no such suspicion was entertained at the time by anybody. The creditors did not correspond directly with either appellant or Fairman, but with Doyle & Lott, as attorneys, and upon the understanding that they were acting as such for appellant. It appears that they, in fact, acted at the immediate instance of Fairman, but for the reasons above indicated we are entirely satisfied that Fairman acted with the consent as well as on behalf of appellant, and that the promise of ap-

pellees, if made as stated by Reed, was one of which appellant might properly take advantage in this action.

If, then, such promise or agreement was made, the only issue in the case was maintained on the part of appellant, and the instructions numbered one and two, given on behalf of appellees, were misleading and erroneous in requiring any other proof in addition, except the tender of Fairman's notes, to constitute a defense. For the same reason the instruction numbered —, asked by appellant and refused, ought to have been given. For these errors the judgment is reversed and the cause remanded.

Reversed and remanded.