The Union Central Life Insurance Company, Appellant, v. Charles A. Weber et al., Appellees.

Gen. No. 9,050.

Opinion filed May 15, 1936. Rehearing denied June 20, 1936.

CLAUDE M. GRANGER, of Kankakee, for appellant.

VERNON G. BUTZ, of Kankakee, for appellees.

MR. JUSTICE WOLFE delivered the opinion of the court.

On June 19, 1935, the appellant filed suit against Charles A. Weber et al. to foreclose a mortgage. The appellant, for convenience, will be hereafter designated as plaintiff and the appellees as the defendants. The original mortgage was given by Charles A. Weber. The property covered by the mortgage had been deeded to a son, Carl P. Weber. The other defendants, aside from the Webers, were nine junior (judgment) lien creditors. The complaint which was in the usual form, alleged the execution of the mortgage, the default in the payment of interest, taxes and insurance, and election to accelerate the indebtedness pursu-

ant to the terms of the mortgage. The mortgage was for the sum of $8,000. The appellee prayed for an accounting and claimed as due on the mortgage the sum of $9,804.37, which included the principal, interest, abstract, expenses, attorney's fees, etc. The Webers filed an answer to the bill in which they admitted the execution of the mortgage and transfer of the property, but denied the exercise of the plaintiff's option to accelerate the payments; or that plaintiff was entitled to foreclosure and prayed proof of the rights of the judgment creditors.

The answer averred that upon plaintiff's inducement, Carl P. Weber and his wife, Edna, applied to the Federal Land Bank and the Land Bank Commissioner who granted them loans for $15,000, provided that amount paid all their debts and all liens against the property; that on their request the plaintiff did on October 14, 1934, sign a statement of indebtedness in effect that upon the payment of $8,250, this sum would be accepted in full settlement of the mortgage debt which might be paid in Federal Farm Mortgage Corporation Bonds. It listed the creditors that had agreed to accept the compromise and the sums of their indebtedness. The answer avers that there was a delay in closing the loans, but that the loans were reapproved on March 10, 1935, and were ready for closing in the latter part of that month, but at this time the plaintiff refused to accept the $8,250, in full settlement for their claims; that the loans are still available to defendants who are ready and willing to pay to the plaintiff the sum of $8,250. The answer concludes with a prayer that the plaintiff be required to accept $8,250 in full settlement of its claim and that the cause be dismissed. The plaintiff's reply denied all the affirmative matter stated in the answer, but averred that while plaintiff had agreed tentatively to compromise its mortgage if the amount was paid within a reasonable time, that

there was no consideration therefor, that the specific amount was not paid to the plaintiff in a reasonable time and that the plaintiff is not bound or its action barred thereby.

The case was submitted to the court who found the issues in favor of the plaintiff so far as the execution of the note and mortgage and default on interest, etc. The amount of indebtedness was fixed at $10,203.12, and the court found in favor of the defendants on their claim that the plaintiff had agreed to accept as a compromise of their claim the sum of $8,250.00. The decree ordered that the defendants pay to the plaintiff the sum of $8,250 with lawful interest within 30 days from the date of the decree and that the plaintiff accept it in full satisfaction of its mortgage indebtedness. If the defendants failed to pay the $8,250 within said time, or if they did not within the succeeding five days pay the amount found to be due, $10,203.12, together with interest and costs of suit, that the mortgage premises should be sold at public sale in the usual manner. From this decree the plaintiff perfected its appeal.

It is conceded by both parties that the Webers made an application for a federal farm loan and they communicated this fact to Mr. Charles Murray, the agent of the plaintiff. In a conversation between Murray and the Webers, the Webers said that they could get a loan for $15,000 provided that amount would pay all of their debts, but that their debts exceeded that amount and therefore it would be necessary for all the creditors, including the plaintiff, to reduce their claims. The Webers suggested that the plaintiff's claim be reduced to the sum of $8,250. Mr. Murray said that he could not accept this offer as he had no authority to do so, but would submit it to his company. Mr. Murray, as representative of the plaintiff, attended a meeting of creditors of the Webers on May 8, 1934, and stated that he had recommended that his company ac-

cept the $8,250 in settlement of their claim. On October 19, 1934, the plaintiff, by its district manager signed the following statement:

"DEFENDANTS' EXHIBIT No. 2.

"CREDITOR'S STATEMENT OF INDEBTEDNESS AND
AUTHORITY FOR PAYMENT        (COPY)

"Application No.        N. F. L. A. or L. C. No.
Applicant    Carl Weber.
To Union Central Life Insurance Co., Cincinnati, Ohio,
        (Name of Creditor)                    (City)      (State)
    Oct. 19, 1934.
        (Date)
Cincinnati, Ohio
    (P. O. Address)
    "You hold a mtg. & notes as an obligation of
                    (Note, account, etc.)
Carl Weber, Manteno, Illinois for $8,000.00. Kindly
    (Name)              (Address)                    .
state below the earliest date said indebtedness can be
paid, giving the amount which you will accept in full
satisfaction of the same on or before said date, or
thereafter, and return this statement to me.
            "(Signed)
                    (Secretary-Treasurer or Loan Correspondent)
"To    John Krueger        Date    October 19th, 1934.
        Secretary-Treasurer or Loan
Correspondent and to The Federal Land Bank of
    St. Louis and/or Land Bank Commissioner.

"The amount of the indebtedness referred to above is $8,017.66 as unpaid principal and $1,531.51 unpaid interest up to the 1st day of Oct. 1934, upon which date or after which date said debt can be paid. Said indebtedness is evidenced by notes
                    (Note, Account, etc.)
due on the 1st day of July, 1928 to 1938 inclusive. The debt is secured by a real estate mortgage which is re-
(is or is not)        (real estate-chattel)
corded in book 371, page 370 of the records of Kankakee

County, State of Illinois. Upon payment to the undersigned of $8,250.00 on or before the x x day of x x , 19    or if paid thereafter, by including interest at the rate of x x per centum per annum on $ x x from said date to the date of payment, said sum will be accepted in full satisfaction of this claim. In connection with any loan or loans that may be made by The Federal Land Bank of St. Louis and/or the Land Bank Commissioner to the above-named application, it is further agreed that said sum may be paid in Federal Farm Mortgage Corporation bonds of the last issue preceding the date the proceeds of the loan are disbursed, fully and unconditionally guaranteed both as to principal and interest by the United States. It is understood that such bonds will be accepted in payment at their face value with any necessary adjustments for interest accrued to the date of payment.

"THE UNION CENTRAL LIFE INSURANCE Co.
Witnesses:

(Signed)        E. H. Bispham,
Asst. Mgr., Northeast Dist.

I. J. Frischolz
L. Stanley        (Signed) ——————————"

The above statement contains other matters that are not pertinent to the issues involved in this litigation, so the whole statement is not quoted. The other creditors of the defendants signed like statements.

The plaintiff repudiated this statement and refused to be bound by it, and now claims that the same was without consideration and therefore void. It also claims that all of the creditors of the Webers did not consent to the scaling down of their claims according to the compromise agreement and that the court erred in so finding in the decree. Part of the testimony of the witness, John Krueger, as abstracted (after the witness identified the consent agreement of the plain-

tiff) is as follows: "The other creditors of Carl Weber consented to accept the remaining proceeds of that loan. There were 20 or 25 of them. I have in my files copies of the consent to accept the 15% by all creditors. The original was with the Federal Land Bank." The trial court heard this witness together with the other testimony in the case and it was his province to give this witness such credit as he thought the testimony was entitled to. Evidently he believed this statement to be true, for in the decree he found in accordance with the testimony as given by this witness.

We think that the evidence clearly shows that there was an agreement among all the creditors of the defendants to scale down their indebtedness and accept a smaller sum in full satisfaction of their claims and that the same were dependent upon the defendants procuring a Federal loan for $15,000. Since the earliest cases, courts have recognized the rule that the payment of a smaller sum in satisfaction of a larger sum is not full discharge of the debtor, but there is a well known exception to this rule, which is that it does not apply in bona fide cases of compromise and settlement. In the case of *National Time Recorder Co. v. Feypel,* 93 Ill. App. 170, the court in discussing what is a good consideration for a compromise of an indebtedness have this to say: "We understand the rule to be that where several creditors join in an agreement of this kind with their common debtor, and in so doing give up their present rights for the general advantage, no other consideration need be shown—the consideration to each creditor being the undertaking by the others—and all are bound, unless it can be shown that the debtor has refused to fulfill his part of the agreement. See *Good v. Cheesman,* 22 Eng. Com. Law, 142; and see, also, note on page 612 of *Cumber v. Wane,* 1 Smith's Leading Cases, 606. 'And if parties mutually agree to postpone the performance of a contract, this

is effectual, the promise of the one being a consideration for that of the other.' Bishop on Contracts, sec. 76.''

It is our conclusion that the agreement of the various creditors of the defendants that they would scale down and compromise their indebtedness was a valid consideration for the various agreements and cannot be avoided on the ground of lack of consideration.

It is next insisted by the plaintiff that they had a right to revoke their agreement to compromise this indebtedness, because there was no time mentioned in which the payments were to be made and that the same was not made in a reasonable time. It will be observed that the statement executed by the plaintiff to compromise this indebtedness, was dated October 19, 1934. It is a well known fact that it usually takes considerable time to secure such a loan. Some time in December, 1934, the plaintiff forwarded to the Federal Land Bank an abstract of title to the lands in question, and the correspondence between the plaintiff and the bank shows that they were relying upon the bank to furnish $15,000 to pay the indebtedness. The evidence shows that the plaintiff did not notify the defendants of the cancellation of their agreement until some time in March, 1935. The evidence further shows that the loan was practically ready to be closed at this time. We think that the court properly held that the defendants were not guilty of unreasonable delay in closing this loan.

It is next insisted that the court erred in not finding the issues in favor of the plaintiff because the defense could not be raised by answer, but only by a cross-bill. In the case of *Gillfillan v. Farrington,* 12 Ill. App. 101, 107, this court considered a very similar case to the one now before us. Many of the questions raised by the plaintiff in this case were discussed by the court in the *Gillfillan* case, and especially the consideration for

the compromise of creditors of a failing debtor. In their opinion the court use this language: "It is true that ever since the decision in *Cumber v. Wane,* 1 Strange, 426, it has been held that a debt cannot be satisfied by the payment of a less sum of the money of the debtor, and that a promise to discharge it upon such payment is void for want of consideration; but the rule does not apply to an agreement, mutual in its obligation, between several creditors with a failing debtor. In such a case the promise of each is supported by those of the others, which is deemed a sufficient consideration. Compliance with its terms on the part of the debtor is a good defense to an action by the creditor for the residue of his original demand—not, indeed, as a technical accord and satisfaction, but upon principles of equity as showing a new adjustment of the debt, so made that he cannot repudiate it without committing a fraud upon other and more faithful creditors.

"This displaces the original contract and hence may be proved under the general issue as well as under a special plea setting up the facts. Upon the same reason, such an agreement by a portion of the creditors, unless conditioned upon the concurrence of others is as valid against them as if made by all. And a tender by the debtor, according to its terms, being equivalent to performance, is sufficient whether such tender be accepted or not. The creditor having by his own fault prevented its actual performance will not be heard to say that the agreement is still executory."

The court in this opinion cited many cases as authority for the rule as above announced, among them, *Mellen v. Goldsmith,* 47 Wis. 573, 3 N. W. 592. In the *Mellen* case, the court reviewed many of the cases cited in the *Gillfillan* case and we quote a part of the opinion in the *Mellen* case. "The really important and only material question here is, Was this agreement valid

and binding upon the appellants, so that its performance by the other creditors and the respondent, in respect to their claims, and the offer of performance by the respondent in respect to the claims of the appellants, constitute a valid defense to this action, brought to recover the full amount?

"The validity of such an agreement does not depend upon the technical and strict rules which govern accord and satisfaction, release and discharge, but upon principles of equity, which treat the violation of or failure to execute such an agreement as a fraud, not only upon the debtor, but more especially upon the other creditors, who have been lured in by the agreement to relinquish their further demands, upon the supposition that the debtor would thereby be discharged of the remainder of his debts. In *Anstey v. Marden,* 1 Bos. & Pull, 124, the plaintiff at one time orally agreed with the other creditors to accept a composition of 10 shillings on the pound, and to assign his claim to Weston, who was to advance the money; but when the agreement was drawn up he refused to sign it, although the other creditors had signed it and received their money. Rooke, J., said: 'Anstey is not the only person here concerned. If he were suffered to recover, he would be guilty of a gross fraud on the other creditors.'

"In *Norman v. Thompson,* 4 Exch. 755, the plaintiff verbally agreed with the debtor defendant, and a part of his other creditors, that he would accept 10 shillings on the pound for his claim, if they would do the same, and afterwards refused to carry out the agreement. Upon demurrer to the replication of the plaintiff, averring that he did not so agree, *modo et forma,* Pollock, C. B., said: 'I do not think there is any ground for doubting that such an agreement is binding. It is a good consideration for one to give up part of his claim, that another should do the same.'

"In *Bradley v. Gregory*, 2 Comb. 383, the plaintiff verbally agreed with the debtor and the other creditors.to execute a composition deed, containing a clause of release, for and by the payment of 10 shillings on the pound of his claim, if the other creditors would do so, and then, upon the execution of the deed by the other creditors, he refused to sign it. Lord Ellenborough said: 'I think the agreement in the present case operates as a satisfaction. But it is said the agreement is executory, and therefore can be no bar. I think it is executed. Everything on the defendant's part was performed. As far as depended upon him there has been satisfaction as well as accord. It is the plaintiff's own fault that he has not enjoyed the full benefit of all that he stipulated for. It would be unjust if the defendant could be sued in this action; and I am of opinion that, in point of law, the action is not maintainable.'

"In *Wood v. Roberts*, 2 Starkie R. 417, in which the facts are similar to those here, Abbott, L. C. J., said: 'If the plaintiff had, by his undertaking to discharge the defendant, induced any other creditor to accept a composition and discharge the defendant from further liability, he could not afterwards enforce his claim, since it would be a fraud upon that creditor.'

"In *Butler v. Rhodes*, 1 Esp. 236, the plaintiff and the other creditors had agreed with the defendant to sign a deed of composition for 10 shillings on the pound; and after the other creditors had signed, the plaintiff refused to do so. Lord Kenyon said that 'it therefore never should be allowed to the plaintiff to recede from what he had undertaken, and to evade the effect of the composition by a refusal to execute the deed which had been prepared with his consent' and directed the jury to find for the defendant."

The defendants by their answer show that they had performed their part of the agreement, or were ready

to perform it, and it is our opinion that such defense was properly raised by the answer to the original bill.

The plaintiff claims that under the pleadings and proof it was entitled to an unconditional decree of sale to satisfy its debt in full with interest, costs and expenses, and that the court erred in not signing a decree to this effect. The plaintiff together with the other creditors of the Webers entered into a compromise agreement whereby they were to scale down their indebtedness and the plaintiff agreed to accept $8,250 in full settlement for their claims against the Webers. The plaintiff should be bound by that agreement. The defendants were ordered to pay the plaintiff the said sum of $8,250, and then the mortgage indebtedness was to be canceled and fully paid. If the defendant does not make payment as ordered, then plaintiff is fully protected by the further provision of the decree.

We find no reversible error in the case and the decree of the circuit court of Kankakee county is hereby affirmed.

*Affirmed.*