Vinylast Corporation, Plaintiff-Appellant, *v*. Alexander Gordon *et al.*, Defendants-Appellees.

(No. 55091;

First District (5th Division)—March 30, 1973.

1044

Collins & Amos, of Chicago, (Donald M. Thompson, of counsel,) for appellant.

Panter, Nelson, Bernfield, of Chicago, (Irwin Panter and Jerry I. Rudman, of counsel,) for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Vinylast Corporation filed a two-count verified complaint in the Circuit Court of Cook County. Count I, against Alexander Gordon, Purpose Extruded Aluminum Company and Al-Gor Corporation, requested an accounting and other equitable relief. Count II, against Gordon and Purpose, alleged breach of contract. Pursuant to defendants' motion, the trial court dismissed plaintiff's complaint for failure to state a cause of action.

On appeal plaintiff argues that it stated a valid cause of action because (1) the creditors' committee as trustee and Gordon as principal trustee breached their fiduciary duties, (2) plaintiff was a third party beneficiary of the creditors' agreement, (3) Al-Fab fraudulently conveyed a security interest for the sale of goods at inflated prices, and (4) the assignment for the benefit of creditors violated the notice requirement of the Bulk Sales Act.

The complaint alleged the following facts regarding both counts: plaintiff Vinylast and defendant Purpose supplied Al-Fab corporation, the predecessor of Al-Gor corporation, with products necessary for its business of manufacturing storm windows. In the spring of 1967, Al-Fab, involved in financial difficulties though solvent, was unable to pay its debts as they became due. As a result of these difficulties Al-Fab entered into a "creditors' agreement." (The complaint does not indicate that plaintiff was a party to this agreement and apparently it was not.) The agreement turned over substantial control of the corporation to a creditors' committee. Defendant Gordon, president of Purpose, became chairman of this committee and took the principal actions of the committee without calling formal meetings. Pursuant to the creditors' agreement, Gordon selected an employee named Zuckerberg to become Al-Fab's comptroller. By exercising power beyond that ordinarily exercised by a comptroller, Zuckerberg, under the control and domination of Gordon, substantially controlled Al-Fab. Plaintiff, although paid for its deliveries prior to the execution of the creditors' agreement, was not paid some $22,952.00 for its deliveries after the execution of the agreement. (The complaint does not clarify whether or not plaintiff was paid for its deliveries prior to the execution of the creditors' agreement pursuant to that agreement.)

The complaint further alleged that defendant Gordon determined to obtain control of Al-Fab and with this in mind, through his position as chairman of the creditors' committee, (1) opposed a settlement plan which would have paid Al-Fab's general creditors 35% of their claims; never informed plaintiff of the proposal, and plaintiff received nothing,

and (2) failed to give plaintiff, a known creditor, a copy of the creditors' agreement, failed to inform plaintiff that Purpose was taking a lien against Al-Fab's property, and informed plaintiff that no liens were being taken. Further, Gordon, through Zuckerberg, (1) caused Al-Fab to purchase all its aluminum from Purpose at prices greater than those charged to Purpose's other customers without informing plaintiff that Al-Fab was not seeking aluminum at the lowest possible prices in the open market, (2) caused financing statements to be filed for the aluminum Purpose shipped to Al-Fab which had the effect of giving Purpose a lien which preferred it over other creditors and permitted it to take control of Al-Fab, and (3) permitted Al-Fab to grant Purpose a lien without the prior consent of the creditors' committee in violation of the creditors' agreement. (The complaint does not show the precise nature of these liens.) These actions were taken in violation of the trust and confidence defendant Gordon owed to Al-Fab's other creditors, amounted to willful malfeasance since he resolved his conflict of interest in favor of his own corporation, and were violations of the creditors' agreement. Defendant Gordon then caused defendant Purpose to cease shipping aluminum to Al-Fab and an assignment for the benefit of creditors followed on March 10, 1969. An advertisement was placed in *The Chicago Daily News* requesting bids on the sale of the business at a minimum of $203,275.24 because of defendant Purpose's bid in that amount consisting of $173,275.24 in liens and $30,000 in cash. Purpose acquired Al-Fab and transferred Al-Fab's business to defendant Al-Gor corporation which is owned and controlled by Purpose and Gordon. This sale was primarily for the benefit of Purpose and Gordon and not for the benefit of all creditors.

The creditors' agreement attached to the complaint purported to be an agreement between Al-Fab and several other parties constituting a committee of Al-Fab's creditors acting on their own behalf and for all the debtor's unsecured creditors who may later approve the agreement. It recited that although Al-Fab was having difficulty paying its obligations if Al-Fab were allowed to continue in business it would be able to pay its obligations in full and that such a continuation of business would be in the best interest of Al-Fab's creditors. The agreement was subject to cancellation by either party if 80% in number of Al-Fab's creditors failed to consent to the agreement.

According to the terms of the agreement, Al-Fab was required (1) to retain title to its assets and to conduct its business in consultation with the creditors' committee, (2) to keep its books available to the committee, (3) to apply its funds first to the normal operations of the busi-

ness including payments for the purchase of new goods, (4) to establish a sinking fund to be administered by the committee to pay *all* those unsecured obligations which arose prior to the execution of the agreement, (5) to pay priority obligations and to subordinate the corporation's debts to officers, directors and shareholders to those of its unsecured creditors, (6) to give priority to the payment of current obligations and to pay those obligations "in accordance with the terms and conditions of each purchase," (7) to keep officers and employees satisfactory to the committee and require all officers and directors to submit undated resignations, (8) to employ a comptroller satisfactory to the committee who must sign all checks, (9) to give the committee notice of all board meetings, permit the chairman or agent of the creditors' committee to attend those meetings, and send the committee true copies of the minutes of such meetings, and (10) to submit a monthly report of operations to the committee and furnish the committee with a year-end audit. Moreover, Al-Fab was prohibited, without the prior consent of the committee, from taking numerous acts normally permitted corporations. Among other acts, it was prohibited from undertaking to "offer or permit voluntarily any encumbrance or lien to attach to the property or assets of the Debtor."

Under the agreement, the committee and the consenting creditors it represents agreed to permit Al-Fab to continue in business at least as long as the best interests of creditors so required. However, Al-Fab's business could be discontinued upon 30 days notice by the creditors, and the committee had the option to "take exclusive possession and control of the Debtor's business and all of its assets at any time after nine (9) days from the date of giving of the said notice." Further, the agreement provided that consenting creditors would extend the due date for their claims for one year. The committee of six members (of whom Gordon was one) was authorized to choose a chairman and would conduct its affairs by majority vote. Members of the committee would be liable only for their willful malfeasance or actual bad faith.

Defendants filed a motion to strike and dismiss plaintiff's complaint. The motion alleged: (1) that the complaint failed to state a cause of action, (2) that the complaint failed to show that plaintiff was a party to the creditors' agreement and thus no contractual or fiduciary duties were owed, (3) that the complaint alleged no facts establishing any actionable violation of contract or fiduciary duty, (4) that the complaint alleged no violation of law, (5) that the complaint alleged no basis for damages in the amount of the liens Purpose acquired, and (6) that the complaint alleging liquidated damages should be brought

at law. The trial court after hearing arguments granted defendants' motion.

*OPINION*

■■ Plaintiff first contends that its complaint stated a cause of action for breach of trust. Plaintiff argues that the creditors' committee established by the creditors' agreement was the trustee for all unsecured creditors because of the substantial powers granted to it by the agreement. Whether a trust was created must be determined in the instant case from the intent of the parties. (*Shaack v. Reiter* (1939), 372 Ill. 328, 23 N.E.2d 714; *Ellis v. Flannigan* (1917), 279 Ill. 93, 116 N.E. 618.) Therefore, we must examine the terms of the creditors' agreement. Since the agreement required Al-Fab to retain legal title to its assets, no transfer of title to a trustee occurred. Thus, one of the essential elements for the creation of a trust is lacking and no trust was created. (*Hall v. Crane Bros. Mfg. Co.* (1877), 87 Ill. 283.) Moreover, plaintiff cites no case going so far as to hold that the transfer of substantial control of a corporation creates a trust.

■■ An agreement, as in the instant case, between an insolvent or embarrassed debtor and some or all of its creditors by which the creditors agree to extend the debtor's obligations and thereby permit the debtor to continue in business is a common law extension agreement. (Nadler, The Law of Debtor Relief (1954), ch. III.) An extension is related to a common law composition agreement by which the creditors agree to reduce the amount of the debtor's obligations. Although an extension does not alter the original contract like a composition (*Pitts Sons' Mfg. Co. v. Com'l Nat'l Bank of Chicago* (1887), 121 Ill. 582, 589, 13 N.E. 156, 159, *aff'g* 21 Ill.App. 483, 487.), the same law relevant to compositions generally applies to extensions. Nadler, The Law of Debtor Relief (1954), ch. III.

■■ An extension agreement is a contractual relationship; the consideration for each creditor's promise is the mutual forbearance of the other consenting creditors. (*Union Central Life Insurance Co. v. Weber* (1936), 285 Ill.App. 568, 2 N.E.2d 746.) The creditors' committee which is frequently established in extension agreements is the agent of consenting creditors. Nadler, The Law of Debtor Relief (1954), sec. 63.

■■ The terms of an extension agreement bind only those creditors who consent to it. (Glenn, The Law Governing Liquidation (1935), sec. 89. *Gillfillan v. Farrington* (1882), 12 Ill.App. 101.) A non-consenting creditor is not a party to the contract; and its right to obtain a judgment against the debtor is not affected by the agreement. Since non-consenting creditors are not parties to the contract, it follows that they are not en-

titled to notice of its provisions or of actions taken pursuant to it. Clearly no trust applicable to plaintiff was created here.

■■ Plaintiff secondly contends that it was a third party beneficiary of the contract Al-Feb entered into with some of its creditors. In Illinois, third parties may enforce agreements entered for their benefit. Whether an agreement was for the benefit of a third party must be determined on a case-by-case basis from the intent of the parties to the agreement. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) The primary intent of the extension agreement in the instant case was to give Al-Fab the opportunity to continue in business by paying its obligations in full over an extended time. Nonetheless, although its right to obtain a judgment against Al-Fab was not affected by the agreement, plaintiff points out that certain provisions of the agreement must have been intended for its benefit. In the agreement Al-Fab agreed (1) to establish a sinking fund to be administered by the creditors' committee for the payment of *all* creditors of the amounts owed prior to the execution of the agreement, (2) to give priority under the supervision of the creditors' committee to the normal operation of the business including payments for the purchase of new goods following the execution of the agreement, and (3) to give no liens without the consent of the creditors' committee.

■■■ In the instant case, however, we need not reach the merits of plaintiff's contention. Even if plaintiff were a third party beneficiary of the extension agreement, it has not stated a cause of action here. The remedy of a third party beneficiary lies against the party to the contract who is required to supply his benefits. In the instant case, although the creditors through their committee were to provide supervision, Al-Fab was to provide the benefits to plaintiff. Thus, Al-Fab was the proper defendant to an action on a third party beneficiary contract; but Al-Fab was not joined as a defendant in the instant case. Moreover, as a result of the assignment for the benefit of creditors Al-Fab is now defunct and its successor Al-Gor did not assume its obligations. Plaintiff, of course, could have obtained basically the same relief against Al-Fab on its original contract as it sought to obtain as a third party beneficiary of the extension agreement. Furthermore, we do not believe that the creditors who consent to an extension agreement guarantee its success; the benefits plaintiff may be entitled to from Al-Fab under the agreement are mere gratuities as against the consenting creditors.

■■ Plaintiff thirdly contends that its complaint stated a cause of action for the fraudulent conveyance of a security interest for the sale of goods at inflated prices. Although the creation of a security interest may some-

times constitute a fraudulent conveyance (*Strohm v. Hayes* (1873), 70 Ill. 41.), the law in Illinois clearly permits a debtor to prefer one or more of its *bona fide* creditors. (*Murry Nelson & Co. v. Leiter* (1901), 190 Ill. 414, 422, 60 N.E. 851, 853.) In the instant case, Gordon, although president of Purpose and chairman of the creditors' committee, was only one of several members of the committee. Further, Purpose obtained the liens by its own diligence as a condition of the sale of its goods as permitted by the terms of the agreement. We believe these liens were a valid preference. Moreover, the bases of the complaint was breach of fiduciary obligation and breach of contract, not fraud; and these bases fail to support a cause of action. Furthermore, Gordon's alleged determination to gain control of Al-Fab in itself is neither fraudulent nor illegal. Therefore, we do not believe plaintiff has stated a cause of action for fraudulent conveyance.

Plaintiff lastly contends that it stated a cause of action for failure to comply with the notice requirement of the Bulk Sales Act. (Ill. Rev. Stat. 1969, ch. 26, art. 6.) Although the Act specifically excepts assignments for the benefit of creditors from its provisions (Ill. Rev. Stat. 1969, ch. 26, sec. 6—103(2).), plaintiff argues that this exception is inapplicable and that the notice requirement of the Act should have been followed since the assignment in the instant case was not for the benefit of all Al-Fab's creditors. We need not reach the merits of this argument however. Plaintiff's complaint failed to allege that the notice required by Bulk Sales Act was not given in the instant case. We will not consider an argument on appeal which was not first raised in the trial court.

Plaintiff having failed to state a cause of action, the judgment of the trial court is affirmed.

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.